IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TEMPUR-PEDIC INTERNATIONAL,            §
INC., et al.,                         §
                                      §
                    Plaintiffs,       §
                                      §   Civil Action No. 3:10-CV-0991-D
VS.                                   §
                                      §
GO SATELLITE INC.,                    §
d/b/a Cloud 9 Mattress, et al.,       §
                                      §
                    Defendants.       §

MEMORANDUM OPINION
AND ORDER

The court must decide whether it can exercise *in personam*
jurisdiction over two Canadian defendants and whether this case
should be dismissed under the doctrine of *forum non conveniens*.
Concluding that the court can exercise *in personam* jurisdiction and
that the suit should not be dismissed based on the doctrine of
*forum non conveniens*, the court denies defendants' motion to
dismiss.

I

This is an action by plaintiffs Tempur-Pedic International,
Inc. ("TP International"), Tempur-Pedic Management, Inc. ("TP
Management"), Tempur-Pedic North America, LLC ("TP North America"),
and Dan-Foam ApS ("Dan-Foam") against defendants Go Satellite Inc.
("Go Satellite") and Steven Hutt ("Hutt"), alleging that defendants
violated plaintiffs' trademark rights under the Lanham Act and
Texas state law by selling Tempur-Pedic mattresses over the

Internet without authorization.[1]  Go Satellite operated two websites——cloud9mattress.us and cloud9mattress.ca (the "Cloud 9 websites")——that sold Tempur-Pedic-brand mattresses.  Go Satellite was not an authorized Tempur-Pedic dealer, and plaintiffs, who own TEMPUR-PEDIC and other related marks, allegedly informed Hutt, Go Satellite's CEO, less than one month before the websites launched that most authorized retailers are prohibited from selling Tempur-Pedic products on the Internet.  When plaintiffs discovered Go Satellite's websites, they requested that defendants and their Internet service provider remove the websites.  The Internet service provider agreed, but defendants switched providers and resumed operating the websites.

The websites had a "live chat" pop-up window, and the "cloud9mattress.us" website advertised a toll-free number, email, no sales tax in all 50 states, and an offer to deliver anywhere in the 48 contiguous states at no extra charge.  Through these websites, which both sides admit were interactive and available to anyone with Internet access, Go Satellite sold at least three Tempur-Pedic mattresses to Texas residents.  One of the Texas sales

---

[1]"The court recounts the pertinent evidence according to the standards that apply when it decides a motion to dismiss without conducting an evidentiary hearing.  The court accepts as true the uncontroverted allegations of [plaintiffs'] complaint and resolves in [plaintiffs'] favor any factual conflicts posed by the parties' affidavits."  *Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F.Supp.2d 895, 897 n.1 (N.D. Tex. 2000) (Fitzwater, J.) (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)).

was to a private investigator hired by Tempur-Pedic. During a telephone call with the investigator, the Go Satellite sales agent informed the investigator that Go Satellite had sold products to Texas residents before. Go Satellite's sales agents continued to communicate with the investigator through email and responded to his inquiries through chat during the delivery process. On one communication, Go Satellite's sales agent encouraged the Texas-based investigator to tell his friends and family about Cloud 9 Mattress' services.

In addition to the websites, defendants allegedly operate an eBay account named "cloud9_mattress" that sells Tempur-Pedic products and offers a special shipping rate for residential curb delivery to Texas residents. Defendants also allegedly operate many websites that offer other types of products all across North America, such as www.gosatellite.com, which advertises that it has sold its products to over 150,000 customers in North America. Plaintiffs allege that, in total, defendants have a 12-year history running d/b/a entities such as Cloud 9 Mattress and operate at least 39 additional websites other than www.gosatellite.com and the Cloud 9 websites, with nearly all such sites registered to the same TCP/IP address and some sharing the same telephone numbers as www.gosatellite.com. Defendants counter that Go Satellite has only been in existence for six years and that Go Satellite has resold Tempur-Pedic mattresses through its Cloud 9 websites for about

three months.

Defendants move to dismiss this lawsuit under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and under the doctrine of *forum non conveniens*. Plaintiffs TP International, TP Management, and TP North America are Delaware corporations with their principal place of business in Lexington, Kentucky. Plaintiff Dan-Foam is a Danish corporation and wholly-owned subsidiary of TP Management, with its principal place of business in Denmark. Defendant Go Satellite is a Canadian company with its principal place of business in Coquitlam, British Columbia, Canada. Defendant Hutt is a citizen of Canada who lives and works in Canada. Plaintiffs allege that Hutt is the CEO of Go Satellite. Hutt admits that he has acted as a representative of Go Satellite in communicating with 1390658 Ontario Inc., plaintiffs' Canadian subsidiary, but he avers that he has never traveled to Texas, owned any property in Texas, maintained any bank accounts in Texas, transacted or solicited any business in Texas, caused tortious injury in Texas, or contracted in his personal capacity to provide services or sell goods in Texas.

## II

The Lanham Act does not authorize nationwide service of process. *See, e.g.*, *Frosty Bites, Inc. v. Dippin' Dots, Inc.*, 2002 WL 1359704, at *2 n.4 (N.D. Tex. June 20, 2002) (Kaplan, J.). "Absent a controlling federal statute regarding service of process,

- 4 -

[the district court must] first determine whether the long arm statute of the forum state permits exercise of jurisdiction. [The district court] then determine[s] whether such exercise comports with due process." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993) (citing Rule 4(e); *Aviles v. Kunkle*, 978 F.2d 201 (5th Cir. 1992)).

When a federal district court determines under a state long-arm statute whether it has *in personam* jurisdiction over a nonresident defendant, the decisional process is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over Go Satellite and Hutt would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.; Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

"The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing

'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'  To comport with due process, the defendant's conduct in connection with the forum state must be such that he 'should reasonably anticipate being haled into court' in the forum state." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted) (citing *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in furtherance of fundamental social policies.  *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

A defendant's contacts with the forum state may support either specific or general jurisdiction over the defendant.  *Mink*, 190 F.3d at 336.  "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action.  General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'"  *Id.* (citations omitted).

When specific jurisdiction is based on online interactions via an Internet website, the Fifth Circuit follows the sliding scale adopted in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). *See Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F.Supp.2d 895, 900-01 & 900 n.10 (N.D. Tex. 2000) (Fitzwater, J.) (citing *Mink*, 190 F.3d at 336). *Zippo* requires the court to assess the level of interactivity of the defendant's website and prescribes a separate course of action for each of the three categories of websites: where a website is nothing more than a passive advertisement, the court must decline to exercise personal jurisdiction; where a website facilitates contractual relationships and the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper; and where a website falls somewhere in between, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website." *Mink*, 190 F.3d at 336 (interpreting *Zippo*).

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnotes omitted).

III

The court considers first whether it can exercise *in personam* jurisdiction over Go Satellite.[2]

A

The due process inquiry begins with the determination whether Go Satellite has sufficient minimum contacts with the forum state of Texas. The court will limit its analysis to whether Go Satellite's contacts support the exercise of specific jurisdiction.[3]

Go Satellite's contacts with Texas are based entirely on the sales it made through its websites. Defendants admit that the websites were interactive, allowing placement of online orders and enabling communication between Texas-based customers and Go

---

[2]Go Satellite's counsel has withdrawn, and Go Satellite has until December 30, 2010 to cause new counsel to enter an appearance. Although it is possible that Go Satellite will not comply with the requirement that it obtain new counsel and that its defenses will be stricken, the court will decide the motion to dismiss. First, at present, Go Satellite's defenses have not been stricken. Second, the question whether the court can exercise *in personam* jurisdiction over Hutt depends on whether the court can exercise specific *in personam* jurisdiction over Go Satellite.

[3]Defendants contend that the maintenance of an interactive website is of itself insufficient to establish *general* jurisdiction. The court agrees. *See Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (noting that *Zippo* test applied in *Mink* is "not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction"). Plaintiffs have not made a prima facie showing that Go Satellite has established substantial, continuous, and systematic contacts in *Texas*, particularly, to support a finding of general jurisdiction.

- 8 -

Satellite's sales staff via live chat and email. Defendants do not deny that the transactions negotiated through the Cloud 9 websites resulted in at least one sale of a Tempur-Pedic mattress to a Texas resident, although they maintain that the sale was "manufacture[d]" by plaintiffs to create jurisdiction in Texas. Plaintiffs have introduced evidence, however, that Go Satellite's sales agent admitted to other sales to Texas residents.

The court must look primarily to the interactivity of Go Satellite's websites to determine whether Go Satellite has sufficient contacts with Texas. *See Mink*, 190 F.3d at 336-37. The interactivity of Go Satellite's websites distinguishes this case from those such as *Mink*, in which the Fifth Circuit held that a corporation's website was insufficient to support the exercise of personal jurisdiction. In *Mink* the website only provided a printable mail-in order form, a toll-free telephone number, and an email address, but had no capacity for buyers to place online orders. *See id.* at 337. By contrast, Go Satellite specifically permits shipping to Texas and enables Texas residents to pay for and purchase products online. *See id.* (distinguishing the case before it, which did not permit online orders, from the facts in *Stomp, Inc. v. Neato, LLC*, 61 F.Supp.2d 1074, 1078 & n.7 (C.D. Cal. 1999), in which the website functioned as a "virtual store"). This is not a "passive advertisement" website where a potential customer is merely encouraged to find out more and directed to contact a

knowledgeable salesperson.  In such a situation, the defendant could avoid subjecting itself to personal jurisdiction by declining to sell to Texas residents.  The Cloud 9 websites enable visitors to complete an order using an "online shopping cart" checkout function, and the "cloud9mattress.us" website lists Texas as among the locations to which Go Satellite will ship.  This is clearly distinguishable from a case where a passive defendant merely lists an email address or telephone number or where a third-party customer, on his own initiative, contacts the defendant to inquire about its willingness to transact business.

Defendants maintain, however, that there have not been sufficient sales to Texas residents to support specific jurisdiction.  They cite several cases in which courts have held that they did not have personal jurisdiction over defendants with interactive websites because there was no evidence of purposeful availment or actual sales.[4]  *See, e.g.*, *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454-55 (3d Cir. 2003) (finding no personal jurisdiction where Spanish website was written in Spanish, fields

_____

[4]Some of the cases cited are of limited persuasive value because the disputes at issue are too dissimilar.  *See, e.g.*, *Dymatize Enters., Inc. v. Maximum Human Performance, Inc.*, 2010 WL 972240, at *6 (N.D. Tex. Feb. 28, 2010) (Ramirez, J.).  *Dymatize Enterprises* was a Lanham Act case based on distribution and false advertising.  Judge Ramirez dismissed the case for lack of personal jurisdiction because of defendant's *lack of specificity* in describing purposeful direction.  It was unnecessary for Judge Ramirez to address what constituted actions purposefully directed at Texas because there were no specific facts to evaluate.  *Id.* at *7.

indicating residence did not accommodate U.S. addresses, only minimal email contact occurred between forum state customers and defendant, and the only sales to forum state were orchestrated by plaintiffs); *Swarovski Optik N. Am. Ltd. v. Euro Optics, Inc.*, 2003 WL 22014581, at *7-8 (D.R.I. 2003) (finding that "merely operating a commercially interactive web site" is not enough for personal jurisdiction where there was no evidence of actual sales or emails, even though forum state was available as mailing address on drop-down list along with 49 other states); *Shamsuddin v. Vitamin Research Prods.*, 346 F.Supp.2d 804, 810, 813 (D. Md. 2004) (noting that some courts have found personal jurisdiction where defendant's website is merely capable of accepting orders from customers in the forum state, but concluding that two sales to forum state manufactured by plaintiff's acquaintances were insufficient for personal jurisdiction). But unlike *Swarovski*, plaintiffs allege specific facts about actual sales and email communications that involved a Texas resident. Absent contrary evidence to refute this allegation, the court in a no-hearing situation must accept the allegation as true. And unlike the Spanish website in *Toys "R" Us*, Go Satellite offers more than contact information for general inquiries: it provides a ".us" website that offers to sell and deliver to any of the contiguous 48 states in the United States, and a Go Satellite's sales agent specifically tried to sell to a Texas resident, even after being informed of the purchaser's state

of residence.

Defendants point out that at least one, and as many as three, of their sales transactions with Texas residents were to plaintiffs' agents, and they argue that such unilateral, manufactured sales cannot form the basis for personal jurisdiction. The court recognizes that there are cases in this circuit that support the premise that a plaintiff cannot establish *in personam* jurisdiction based on such sales. *See, e.g.*, *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987) (noting that defendant's contact must not have resulted from the unilateral activity of the plaintiff in order for specific jurisdiction to be proper); *QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650, 661 (E.D. Tex. 2007) (refusing to consider sales that were initiated by plaintiff's investigator). But even if the court disregards the one sale to the Texas-based investigator plaintiffs hired, there are sufficient alleged sales to other Texas residents to establish a prima facie case for specific jurisdiction. In accusing plaintiffs of orchestrating as many as three sales to Texas, defendants appear to admit the existence of two other sales to Texas. The court could infer that plaintiffs, who failed to mention favorable evidence of additional sales in any prior court document, were previously unaware of such sales and therefore not responsible for arranging the two sales. Additionally, accepting as true the testimony of plaintiffs' investigator, Go Satellite's

sales agent admitted to other sales to Texas residents. Whatever sales occurred would have happened within the short period of time that the Cloud 9 websites were operational——fewer than three months. Therefore, this lawsuit is distinguishable from *Swarovski*, where there was no evidence of actual sales, and *Shamsuddin*, where there was evidence of only two sales, both of which were manufactured through plaintiff's acquaintances. *Cf. Bearry*, 818 F.2d at 374 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)) (noting that even single, non-unilateral contact can form a basis for specific jurisdiction).

A "more relaxed 'mere foreseeability' test" applies to cases that involve products still in the stream of commerce in the forum state. *See Luv n' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) ("[M]ere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce.");[5] *accord Ruston Gas Turbines*, 9 F.3d

---

[5]In adopting this test, the Fifth Circuit has declined to follow the four Members of the Court in *Asahi Metal Industries Co. v. Superior Court of California*, 480 U.S. 102, 112 (1987), who suggested that some additional action from defendant, beyond foreseeability, would be necessary to convert the mere act of placing a product in the stream of commerce into an act purposefully directed toward the forum state. *See Luv n' Care*, 438 F.3d at 470; *see also Asahi*, 480 U.S. at 117 (Brennan, J., concurring) (expressing the opinion of four other members of the *Asahi* Court, who felt that no act other than placing the product in the stream of commerce was necessary). *Luv n' Care* also appears to

at 419-20; *Ham*, 4 F.3d at 416 & n.11 ("Absent rejection by a majority on the Supreme Court, we have continued to apply the stream of commerce analysis found in our pre-*Asahi* cases."). *See also Luv n' Care*, 438 F.3d at 470-71 (extending personal jurisdiction where defendant's invoices indicated forum state as the destination, and concluding that businesses cannot claim ignorance of contents of their own orders). This test stands in contrast with cases from other circuits that defendants cite, which require "something more" to demonstrate that the defendant specifically intended to direct its activities toward the forum state. *See Toys "R" Us*, 318 F.3d at 452-53. Notably, *Toys "R" Us* does not cite a Fifth Circuit case in its survey of precedent, perhaps because specific intent to target the forum state does not appear to be a requirement for purposeful availment in the Fifth Circuit. Because the Fifth Circuit seems to follow a different standard than the circuits on which defendants rely, *compare Luv n' Care*, 438 F.3d at 470-71 (holding that Supreme Court precedent does not bar "mere foreseeability" from being constitutionally sufficient when defendant's product enters the forum state while in the stream of commerce) *with Shamsuddin*, 346 F.Supp.2d at 814

---

distinguish itself from cases such as *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)——which held that foreseeability alone does not provide a sufficient basis for personal jurisdiction——by limiting its holding to situations where there is foreseeability *and* entry into the forum state's stream of commerce. *Luv n' Care*, 438 F.3d at 470. The instant case involves such circumstances.

(interpreting *World Wide Volkswagen*, 444 U.S. at 297, to require "deliberate, rather than merely foreseeable, contacts"), the cases outside this circuit applying *Zippo* have less persuasive weight than they would otherwise. *Cf. Shamsuddin*, 346 F.Supp.2d at 809-10 (noting significant variation in ways that courts have applied the *Zippo* test).

The court therefore concludes that plaintiffs have made a sufficient prima facie showing of minimum contacts to ensure that Go Satellite is not being haled into this jurisdiction "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475. Unlike the defendants in cases such as *World-Wide Volkswagen*, where defendants' products had passed completely to consumers' control, Go Satellite is not a victim of unilateral third-party conduct. Go Satellite cannot open itself for business to every state in the United States and then feign surprise when it receives an order from a resident of one of the states. Go Satellite deliberately held itself out as willing to sell to residents in all 50 states, accepted customers from Texas, and shipped products to Texas. *See AdvanceMe, Inc. v. Rapidpay LLC*, 450 F.Supp.2d 669, 673-74 (E.D. Tex. 2006) (finding personal jurisdiction on basis of two sales to Texas, ongoing potential for sales to Texas, and drop-down menu of states that allowed potential customer to identify Texas as its state). Go Satellite would have been aware that filling any orders made by persons with Texas

addresses would mean shipping the products to Texas in the stream of commerce. Construing the evidence in plaintiffs' favor, Go Satellite's sales agent was not only aware that a Texas resident was seeking to purchase a mattress and to arrange delivery into Texas, but the agent even admitted to prior sales in Texas as a selling point and encouraged one Texas resident to tell his acquaintances about Go Satellite's products. Furthermore, the websites were designed in a way that permitted Texas residents to engage in ongoing interactions with Go Satellite: the residents could ask questions via live chat, place orders, and continue communicating with the staff to follow up on shipping and payment. *See Am. Eyewear*, 106 F.Supp.2d at 898 and 901-02 (concluding that New York-based website had sufficient contacts to support specific jurisdiction where fewer than 0.5% of sales came from Texas, but website was intended to reach every person with Internet access, including Texans, and provided order forms and ways to communicate with customer service). In short, Go Satellite established a website targeting United States residents and offering shipping to United States addresses. Unlike sellers in online auctions, who may have limited control over those with whom they transact business, *cf. McGuire v. Lavoie*, 2003 WL 23174753, at *3 (N.D. Tex. Aug. 19, 2003) (Ramirez, J.) (reviewing decisions that have found that there is no personal jurisdiction over Internet auction sellers, and noting that such sellers have no control over who

would ultimately be the highest bidder), had Go Satellite wanted to exclude certain jurisdictions, it was able to refuse to deal with certain customers or to turn down any orders after checking customer addresses. As *Zippo* itself notes, "If [the defendant] had not wanted to be amenable to jurisdiction in [the forum state], the solution would have been simple——it could have chosen not to sell its services to [forum-state] residents." *Zippo*, 952 F. Supp. at 1126-27; *cf. QR Spex,* 507 F.Supp.2d at 660 (holding that website that permitted pre-orders did not rise to level of an offer to sell under traditional contract law principles, and was insufficient for minimum contacts finding).

The court therefore concludes that plaintiffs have made a prima facie showing of minimum contacts to support a finding of specific *in personam* jurisdiction over Go Satellite.

B

The court next determines whether exercising personal jurisdiction over Go Satellite would satisfy traditional notions of fair play and substantial justice.

Addressing some of the *Burger King* factors, Go Satellite maintains that it is a small company (four employees), it would be required to travel from Canada to Texas for trial, and it would be obligated to submit itself to a foreign nation's judicial system. It contends that the burden would be extremely high because it has no contacts with Texas. Go Satellite also posits that Texas'

interest in this lawsuit is minimal because no plaintiff resides here, the majority of plaintiffs' claims are brought under federal rather than Texas law, Go Satellite's alleged acts did not take place in Texas, and plaintiffs have failed to identify any sales made to Texas residents. Finally, Go Satellite asserts that plaintiffs can obtain effective relief by suing it in Canada, where they have a presence through a Canadian subsidiary.

Go Satellite must present a "compelling case" that jurisdiction is unreasonable and incompatible with "fair play and substantial justice." *Burger King*, 471 U.S. at 477-78. "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *See Wien Air Alaska*, 195 F.3d 208, 215 (5th Cir. 1999) (alterations in original) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1547 (Fed. Cir. 1995)). Go Satellite has not made the required compelling case.

Plaintiffs have made a prima facie showing that Go Satellite has intentionally made sales to Texas residents. Other than its small size and the fact that it is a Canadian corporation, Go Satellite has not shown any reasons——certainly not compelling ones——to conclude that it will be unduly burdensome to defend itself in a forum where the evidence shows it has intentionally made sales. Texas has an interest in protecting its consumers from consumer confusion or deception, and plaintiffs are suing based on harm to their goodwill and false advertising affecting the Texas

market.  And even if Canada is an available forum to plaintiffs, this is of itself, or in combination with the other *Burger King* factors, insufficient to establish a compelling case that exercising *in personam* jurisdiction is unreasonable and incompatible with fair play and substantial justice.

C

Having found that minimum contacts exist to support specific jurisdiction and that the exercise of *in personam* jurisdiction would not offend traditional notions of fair play and substantial justice, the court holds that it can exercise *in personam* jurisdiction over Go Satellite, and it denies defendants' motion to dismiss in this respect.

IV

The court next addresses whether it can exercise *in personam* jurisdiction over Hutt.

A

Defendants argue that the fiduciary-shield doctrine prevents the court from exercising personal jurisdiction over Hutt based on Go Satellite's contacts.  Plaintiffs posit that the fiduciary shield doctrine is inapposite because Hutt's actions in supporting the infringement were intentional.  They maintain that the court can exercise specific jurisdiction because Hutt was Go Satellite's CEO during the relevant periods and he was personally aware of Tempur-Pedic's position barring most of its authorized retailers

- 19 -

from selling its products via the Internet.

B

Generally, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). But this rule does not apply to a corporate officer who injures a third person by his tortious activity, even if such acts are performed within the scope of his employment. *Id.; accord Carrot Bunch Co. v. Computer Friends, Inc.*, 218 F.Supp.2d 820, 826 (N.D. Tex. Aug. 14, 2002) (Buchmeyer, J.) (noting that personal jurisdiction is proper when defendant intentionally directs tortious activities toward forum state); *Ponder Research Grp., LLP v. Aquatic Navigation, Inc.*, 2009 WL 2868456, at *7 (N.D. Tex. Sept. 4, 2009) (Means, J.) ("The fiduciary-shield doctrine is not absolute however. The doctrine does not apply to intentional torts or fraudulent acts committed by a corporate officer or agent."); *Global 360, Inc. v. Spittin' Image Software, Inc.*, 2005 WL 625493, at *7 (N.D. Tex. Mar. 17, 2005) (Lindsay, J.) (finding specific jurisdiction where officer's trademark infringement actions, such as registering and maintaining website that sold infringing products to Texas consumers, were intentional). "The thrust of the general rule is that the officer to be held personally liable must have some direct, personal

- 20 -

participation in the tort, as where the defendant was the guiding spirit behind the wrongful conduct or the central figure in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985) (internal quotation marks and ellipsis omitted) (quoting *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 907 (1st Cir. 1980)).

Plaintiffs allege in their complaint that Hutt, as Go Satellite's founder, CEO, and owner, supervises and controls the day-to-day operations of Go Satellite. They also assert that Hutt had knowledge of, directed, controlled, supervised, acted in concert with, and/or took action that contributed to Go Satellite's purportedly unlawful activities. For factual support, they aver that in February 2010 Hutt met with an employee of Tempur-Canada to inquire about the requirements for becoming an authorized Tempur-Pedic retailer. The Tempur-Canada employee allegedly informed Hutt that Tempur-Canada prohibits most of its authorized dealers from selling Tempur-Pedic products via the Internet. Within one month of Hutt's being informed of this policy, Go Satellite had set up the Cloud 9 websites to sell Tempur-Pedic mattresses online, even though plaintiffs never approved Hutt as an authorized retailer. Plaintiffs communicated their trademark infringement accusations directly to Hutt, personally informing him of their position around March 3, 2010. Plaintiffs also persuaded defendants' Internet service provider to disable the Cloud 9 websites, but defendants

resumed running the websites via another service provider.

Given the proximity in time between Hutt's discovery of Tempur-Canada's Internet sale policy and his company's establishment of another website, and given the communications that plaintiffs sent to Hutt personally, plaintiffs have made a prima facie showing that Hutt willfully infringed plaintiffs' trademark. As the officer in control of a company with only four employees, Hutt was the "central figure" behind Go Satellite's infringement. Hutt avers that he was not personally aware of any specific sales by Go Satellite to anyone in Texas, but he does not deny that, by establishing a "cloud9mattress.us" website, advertising "no sales tax all 50 states," and offering to deliver anywhere in the 48 contiguous states, Go Satellite was targeting the United States market and open for accepting orders from any state, including Texas.

The court concludes that the CEO of a small company, even if unaware of the particulars of any individual sale to Texas, plays the role of a "central figure" in bringing about Texas sales when he intentionally approves a website whose entire purpose is to solicit sales from all 50 states in the United States and permits the website to continue even after receiving communication directed to him personally urging him to take action to prevent trademark infringement. Given the prima facie evidence of intentional infringement and Hutt's level of knowledge and control, the

fiduciary-shield doctrine does not apply, and the court can exercise personal jurisdiction over Hutt.

V

Having determined that it can exercise *in personam* jurisdiction over both defendants, the court now considers whether it should dismiss this case under the doctrine of *forum non conveniens*.

A

"A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing plaintiff's chosen forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).[6] In addressing a *forum non conveniens* challenge where the proposed alternate forum is in another country, the court applies a two-part analysis. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996) (noting that *forum non conveniens* doctrine has been

_____

[6]"When the plaintiff's choice is not its home forum . . . the presumption in the plaintiff's favor 'applies with less force[.]'" *Sinochem*, 549 U.S. at 430 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). But where a United States plaintiff seeks to bring suit against a foreign defendant in a United States court, several courts have held that "the 'home forum' for the plaintiff is any federal district in the United States, not the particular district where the plaintiff lives." *Reid-Walen v. Hansen*, 933 F.2d 1390, 1394 (8th Cir. 1991) (concluding that, where the alternate forum is foreign, the relevant distinction is whether the plaintiff is a United States citizen, not whether the plaintiff resides in the particular district where the case was brought); *Adelson v. Hananel,* 510 F.3d 43, 53 (1st Cir. 2007); *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 146 n.4 (2d Cir. 2000); *Snaza v. Howard Johnson Franchise Sys.*, 2008 WL 5383155, at *11 (N.D. Tex. Dec. 24, 2008) (O'Connor, J.).

superseded by 28 U.S.C. § 1404(a) for transfers of venue within the federal court system, but that common law *forum non conveniens* doctrine still applies in cases where the alternative forum is abroad). First, the court considers whether an available and adequate alternative forum exists that could have jurisdiction over the dispute. *Alpine View*, 205 F.3d at 221. Second, the court weighs private and public interest factors to determine the favored forum. *Id.* at 221-22. The court will assume *arguendo* that an available and adequate alternative forum exists in Canada and will therefore weigh the private and public interest factors.

B

The presumption in favor of the plaintiff's chosen forum "may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987). The private interest factors are:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witness; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342 (5th Cir. 1999) (alterations in original) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The public interest factors are:

> The administrative difficulties flowing from
> court congestion; the "local interest in
> having localized controversies decided at
> home"; the interest in having the trial of a
> diversity case in a forum that is at home with
> the law that must govern the action; the
> avoidance of unnecessary problems in conflict
> of laws, or in the application of foreign law;
> and the unfairness of burdening citizens in an
> unrelated forum with jury duty.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (quoting

*Gilbert*, 330 U.S. at 509).

C

The court turns initially to the private interest factors.

1

The first factor—the relative ease of access to sources of

proof—favors plaintiffs.[7] Defendants argue that their web hosting

companies, company records, and employees are located in Canada.

Inconveniences in travel for the parties or location of documents

do not necessarily add up, however, to difficulty of access to

sources of proof. Defendants have access to their own records and

web hosting data, whether this case is litigated in Texas[8] or in

British Columbia, and the court can compel parties to the suit to

produce discovery. Instead, the court should consider in the

---

[7]Defendants cite reasoning under the first factor that appears
to be germane to the second factor, but the court will discuss
these arguments here because defendants rely on them under the
first factor.

[8]Because Go Satellite is a foreign corporation, the home forum
for plaintiffs is any federal district in the United States. *See
supra* note 6.

context of this factor whether there are third-party witnesses in the United States or Canada from whom discovery may become difficult to obtain if the case is litigated in a foreign court. Although defendants note the locations of Go Satellite's offices and web hosting companies, they do not identify the third-party witnesses or potential evidence that could become more difficult to access if the litigation is conducted in this court. Plaintiffs, by contrast, explain that there may be a third party in Vermont who helped store and ship defendants' infringing products, and third party retailers in the United States who supplied unapproved products to defendants. Defendants have not explained why traveling to Texas would of itself create a burden under this factor.

2

The second factor—availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses—does not particularly favor either side. Defendants allege that some of their potential witnesses reside in Canada: their own officers, shareholders, and employees and some of their web host's employees. But defendants do not specify whether any of these foreign witnesses is *unwilling* to participate in the litigation so as to require compulsory process. Go Satellite's employees and officers should be categorized as willing witnesses because Go Satellite can compel them to testify, without the need

for compulsory process.[9]  By contrast, as with the first private interest factor, plaintiffs have pointed to potential third-party witnesses located in the United States who may be difficult to subpoena for litigation conducted in Canadian courts, while defendants have not identified any third party in Canada, other than the web host, whose testimony it seeks.

Furthermore, defendants do not offer a sufficient explanation of the costs they would incur in securing the attendance of *willing* witnesses and why such costs would be so disproportionate, when compared to plaintiffs' costs in bringing its witnesses to Canada, as to clearly favor Canada as the appropriate forum.  Given that the relevant market and affected stream of commerce are in the United States, and that any witnesses who may testify as to the validity of the trademark itself would be located in this country, it is not apparent that the costs to plaintiffs of securing their witnesses' participation in Canada would be any less burdensome than what defendants will incur if the litigation continues in this court.

---

[9]Defendants point to Rule 45(c)(3)(B)(iii) as problematic because it provides that the court can quash or modify a subpoena that requires a witness to travel more than 100 miles.  But defendants have not explained whether quashing subpoenas under this Rule would apply to any particular witness.  If, for example, a witness were a party or a party's officer, the witness would be subject to the court's subpoena power.  *See* Rule 45(c)(3)(A)(ii) (limiting scope of quashal to witness "who is neither a party nor a party's officer").

Because neither party finds the third factor applicable, the court now considers the fourth: "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Dickson Marine*, 179 F.3d at 342.

The only other consideration that defendants raise under the private interest factors is the relative burdens of travel. Because plaintiffs must travel regardless whether the case is litigated in Canada or in Texas, defendants argue that plaintiffs will be less inconvenienced by being required to litigate in Canada than will defendants, one of whom is a small company, by being required to defend in Texas. Defendants also note that all the identified potential third-party witnesses other than plaintiffs' private investigator live outside Texas. The court agrees that this factor favors defendants.

D

The court now turns to the public interest factors. The court need not discuss these factors at length because only these two—the local interest in deciding localized controversies and the application of foreign law—have been sufficiently addressed in the briefing.

The United States has an interest in protecting its federally recognized trademarks and protecting United States consumers from infringing products. The complained-of injury to plaintiffs' trade

reputation occurred entirely in the United States, the infringing acts concern Go Satellite's sales to United States (including Texas) residents, and Go Satellite sold and transported infringing goods into United States commerce. The Lanham Act unquestionably extends to such injuries and actions. *See* 15 U.S.C. § 1127 (defining "[t]he word 'commerce' [to] mean[] all commerce which may lawfully be regulated by Congress" throughout the Lanham Act and defining "use in commerce" to include placement on a mark on goods "sold or transported" in commerce); *see Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 641 (2d Cir. 1956) (noting that, "[w]hile Congress has no power to regulate commerce in the Dominion of Canada, it does have power to regulate commerce 'with foreign Nations, and among the several States,'" and using this constitutional grant of power in U.S. Const. art. I, § 8, cl. 3 to justify Lanham Act applicability in all commerce that has a substantial effect on commerce between the United States and foreign countries); *see, e.g.*, *Miller Brewing Co. v. Carling O'Keefe Breweries*, 452 F. Supp. 429, 442-43 (W.D.N.Y. 1978) (applying Lanham Act to Canadian company that advertised on U.S. television stations, despite fact that infringing product was only sold in Canadian stores, where U.S. plaintiff and U.S. trademark were involved). And it would be most efficient for a United States court to preside over this case, which requires application of

United States law.[10]

E

Weighing the private and public interest factors together, the court finds that defendants have failed to meet their heavy burden of establishing that this case should be dismissed under the doctrine of *forum non conveniens*. They have failed to demonstrate that the private and public interest factors clearly point towards trial in the alternative forum.

*     *     *

For the foregoing reasons, the court denies defendants' July 20, 2010 motion to dismiss for lack of personal jurisdiction or under the doctrine of *forum non conveniens*.[11]

**SO ORDERED.**

December 8, 2010.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[10]It is possible that a Canadian court would apply United States trademark law where the affected market is entirely in the United States. R. Scott Joliffe & A. Kelly Gill, *Fox on Canadian Law of Trademarks and Unfair Competition* § 17.6 (4th ed. 2002) (quoting M. Baer et al., *Private International Law in Common Law Canada* 528 (1997), for the prediction that Canadian courts will "almost certainly" apply the law of the forum where the market and alleged damage to goodwill exists).

[11]Because the court has denied the motion, it also denies plaintiffs' alternative motion for jurisdictional discovery as moot.